1

2

3

4                   **UNITED STATES DISTRICT COURT**

5                        **DISTRICT OF NEVADA**

6                                * * *

7    GERARDO PEREZ,                          Case No. 2:21-cv-00075-RFB-MDC

8                 Plaintiff,                                **ORDER**

9         v.

10   JENNIFER NASH, *et. al*.,

11               Defendants.

12

13        Before the Court is the Motion for Summary Judgment by Defendants Gregory Bryan and

14   Jennifer Nash. (ECF No. 163). For the following reasons, the Motion is denied.

15

16   **I.    PROCEDURAL HISTORY**

17        On January 14, 2021, Plaintiff Gerardo Perez, who was imprisoned by the Nevada

18   Department of Corrections ("NODC"), filed his complaint *pro se*, pursuant to 42 U.S.C. § 1983.

19   (ECF No. 1). On May 13, 2021, after mandatory screening, the Court allowed Plaintiff's complaint

20   for deliberate indifference to a serious medical need under the Eighth Amendment to proceed

21   against Defendants Dr. Gregory Bryan and Jennifer Nash, NDOC employees who were involved

22   in Plaintiff's medical treatment while housed at High Desert State Prison ("NDOC Defendants").

23   (ECF No. 23). Plaintiff claims arising from his medical treatment while housed in prison facilities

24   in Arizona were also allowed to proceed. Those claims were brought against Defendants who

25   worked for CoreCivic ("CoreCivic Defendants"), the entity that contracted with NDOC to house

26   Plaintiff in Arizona.

27        On March 21, 2023, NDOC Defendants filed a Motion for Summary Judgment. (ECF No.

28   122). On June 30, 2023, Plaintiff filed a Motion for Appointment of Counsel. (ECF No. 140). On

July 6, 2023, the Court granted Plaintiff's Motion and stayed the case pending appointment of counsel. (ECF No. 142). January 24, 2024, *pro bono* counsel James Urrutia was appointed to represent Plaintiff. (ECF No. 151). Mr. Urrutia appeared on behalf of Plaintiff on February 8, 2024. (ECF No. 152). On February 16, 2024, the Court denied the NDOC Defendants' Motion for Summary Judgment (ECF No. 122) without prejudice and ordered the parties to meet and confer to enable Plaintiff's counsel to familiarize himself with the case and to propose a new scheduling order. (ECF No. 153). On March 4, 2024, CoreCivic Defendants filed a Motion to Dismiss. (ECF No. 155). On March 5, 2024, the Court granted the parties' joint proposed Scheduling Order, with a discovery deadline of August 28, 2024, and a dispositive Motion deadline of September 27, 2024. (ECF No. 156). On May 17, 2024, the Court granted CoreCivic Defendants' motion to stay the case as to them, pending resolution of their (ECF No. 155) Motion to Dismiss. (ECF No. 162).

On June 7, 2024, NDOC Defendants filed the instant Motion for Summary Judgment, based solely the issue of whether Plaintiff adequately exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). (ECF No. 163). The Motion was fully briefed. (ECF Nos. 166-168). NDOC Defendants also filed a Motion to Stay the case pending the Court's decision on summary judgment, which Plaintiff did not oppose. (ECF Nos. 164-165).

On January 27, 2025, the Court was advised that Plaintiff had been paroled.

On February 19, 2025, the Court held a hearing on the CoreCivic Defendants' (ECF No. 155) Motion to Dismiss, the NDOC Defendants' (ECF No. 163) Motion for Summary Judgment, and the NDOC Defendants' (ECF No. 164) Motion to Stay. At the hearing, the Court granted the CoreCivic Defendants' Motion to Dismiss without prejudice and granted Plaintiff leave to amend his complaint. (ECF No. 176). The Court also granted the NDOC Defendants' Motion to Stay pending the Court's decision on the summary judgment as to NDOC, *nunc pro tunc*. Id. The Court took the NDOC's summary judgment motion under advisement. Id. The Court's Order on NDOC's Motion for Summary Judgment on exhaustion follows.

On March 7, 2025, Plaintiff filed an Amended Complaint which added additional NDOC Defendants including NDOC caseworker and contract monitor Robert J. Mears, NDOC registered nurse Patricia Smith, NDOC medical provider Dr. Aranas, and NDOC correctional officer Perez.

(ECF No. 177).

## II.    FACTUAL BACKGROUND

### A.  Undisputed Facts

The Court finds the following facts relevant to whether Plaintiff sufficiently exhausted his administrative remedies under the PLRA to be undisputed.

NDOC provides an administrative grievance procedure for inmates, Administrative Regulation ("AR") 740. AR 740 requires NDOC inmates to exhaust three levels of grievance procedure: the informal level, a first level appeal, and a second level appeal. If a response is overdue, an inmate can proceed to the next level of appeal.

On April 19, 2020, while housed at the Saguro Correctional Center in Arizona, Plaintiff filed an informal grievance number 2006-31-2129 regarding NDOC's denials of medical care relating to his back injuries. The grievance stated NDOC had known of Plaintiff's injuries, and the fact that he had been receiving medical treatment for said injuries prior to his incarceration, since the time he was initially arrested and detained at the Clark County Detention Center. The grievance described the manifestation of symptoms relating to his back injuries including pain down his right leg and loss of feeling from the waist down on his right side, which he had been experiencing for about two years. The grievance detailed the fact that a CoreCivic medical provider, Dr. Hagmann, had requested Plaintiff receive an MRI and stronger medication, but those requests had been denied by "contract Monitor Robert J. Meares, the NDOC and the NODC Directors." The grievance asked that his medical history and records be reviewed, as they would show the lack of medical care Plaintiff had been provided no matter the severity of his pain.

The 2006-31-2129 grievance was denied. Plaintiff signed the denial on June 22, 2020, and indicated he disagreed with the denial.

Plaintiff was transferred from Arizona to High Desert State Prison on November 27, 2020.

### B.  Disputed Facts

The parties dispute the following facts relevant to whether Plaintiff exhausted his administrative remedies under AR 740.

In a declaration, Plaintiff swore that he kept track of his 2006-31-2129 using a mini calendar he had in his possession. After approximately sixty (60) days, he had received no response to his informal grievance, so Plaintiff filled out a "First Level Grievance" form, and handed it to CoreCivic Defendant caseworker Carlos Narvaez at Saguro Correction Center, who told him it would be mailed to NDOC. After another 60 days, Plaintiff filled out a Second Level Grievance form and again handed to Defendant Narvaez, who said it would be mailed to NDOC. After another 60 days, Plaintiff wrote a letter to Robert Mears, stating he had not received a response to his Second Level Grievance.

The grievance history report for Plaintiff, covering the time period from January 1, 2018 to March 3, 2024, does not include the First Level and Second Level grievances that Plaintiff states he filed while still housed at CoreCivic. Plaintiff therefore disputes the accuracy of Defendants' grievance history report.

Plaintiff also submitted documentation, reportedly obtained from his Arizona medical records, reflecting that on November 28, 2020, the day after Plaintiff was transferred from Arizona to High Desert State Prison, Plaintiff filed a first level appeal of grievance 2006-31-2129 on November 28, 2020, which stated that the 45 days allowed for NDOC to respond to his first level grievance, which he filed approximately on June 24, 2020, had passed, and Plaintiff still had not received proper medical treatment due to NDOC denying requested treatment while Plaintiff was housed in Arizona. Plaintiff's documentation reflects a response signed by Plaintiff on August 18, 2021, which rejected Plaintiff's first level appeal for failure to attach the denial of his informal grievance, pursuant to AR 740.08 number 40(5). This documentation is not reflected in the grievance history report provided by NDOC.

Plaintiff also submitted documentation reflecting that on August 26, 2021, Plaintiff filed a second level grievance form which stated that his first and second level grievances had not yet been responded to. Plaintiff's documentation reflects a response signed by Plaintiff on September 23, 2021, rejecting his second level grievance for failure to attach supporting documents including "all previously submitted grievance(s) which include Official Response(s) under this grievance log number, and all Improper Grievance Memo(s) under this grievance log number . . ." This

documentation is not reflected in the grievance history report provided by NDOC.

Plaintiff disputes the accuracy of NDOC's recordkeeping regarding Plaintiff's grievances because the above described first and second level grievance appeals are not included in NDOC's grievance history report.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). Where a genuine dispute of material fact exists, however, the court will assume the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor ....").

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### IV.    DISCUSSION

The Court now turns to the merits of the pending Motion for Summary Judgment. NDOC defendants argue that Plaintiff has failed to establish a genuine issue of material fact as to

1    Plaintiff's failure to exhaust his administrative remedies under AR 740. As detailed below, the

2    Court finds that Plaintiff has established a genuine dispute of material fact as to whether he fully

3    exhausted his administrative remedies under AR 740, and as to whether the AR 740 procedures

4    were effectively unavailable to him.

5        Additionally, the Court finds that because Plaintiff filed an amended complaint after he

6    was released from prison, the PLRA exhaustion defense no longer applies to him.

7        **A.    Exhaustion**

8        Failure to exhaust under the Prison Litigation Reform Act ("PLRA") requires that before

9    bringing a § 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C

10    § 1997(e)(a). Exhaustion must be proper, meaning that the prisoner must proceed through each

11    step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)

12    (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006). The requirements for proper exhaustion under

13    the PLRA depends on the applicable grievance procedure of each individual prison. Jones v. Bock,

14    549 U.S. 199, 218 (2007).

15        Failure to exhaust is an affirmative defense and defendants bear the burden of proving

16    it. Id. at 218.  If the defendants do so, then the burden shifts to the inmate to show "there is

17    something in his particular case that made the existing and generally available administrative

18    remedies effectively unavailable to him by showing that the local remedies were ineffective,

19    unobtainable, unduly prolonged, inadequate, or obviously futile." Williams v. Paramo, 775 F.3d

20    1182, 1191 (9th Cir. 2015) (quotation omitted). As this Court has previously noted, "the intent of

21    the exhaustion requirement is to place the facility on notice of issues raised by an inmate and not

22    erect esoteric and irrelevant procedural requirements." Williams v. Allen, No. 2:17-cv-01612-

23    RFB-DJA, 2020 U.S. Dist. LEXIS 94684, *21, 2020 WL 2798009 (D. Nev. May 29, 2020); see

24    also Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("The primary purpose of a grievance

25    is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for

26    litigation.").

27        The NDOC Defendants argues that Plaintiffs claims are unexhausted as to Nash and Bryan

28    under AR 740.08-740.10, because Plaintiff only filed an informal first level grievance and did not

1  formally appeal to the second and third levels as required by AR 740.

2      The court finds that Plaintiff has established a genuine dispute of material fact as to whether

3  he filed a first and second level grievance after a response was not timely received, while he was

4  still incarcerated at SCC, through caseworker Narvaez.

5      The Court finds Plaintiff has also established a factual dispute as to the accuracy of

6  Defendant's grievance processing and tracking system and other record keeping and document

7  retention policies related to administrative grievances. It is already clear from the record that

8  Defendants did not retain grievances that were filed by Plaintiff which were denied for a technical

9  deficiency—the failure to attach the first grievance response. Defendants are not entitled to

10  summary judgment on early exhaustion when prison records pertaining to inmate grievances are

11  incomplete. See Kimbro v. Miranda, 735 F. App'x 275, 278 (9th Cir. 2018) ("Where prison

12  officials fail to retain records relating to the filing or processing of an inmate's grievance, the

13  prisoner should be deemed to have exhausted administrative remedies.").

14      Independent of the above, the Court finds that the first and second level grievance

15  procedures were "effectively unavailable" to Plaintiff. The record reveals that when Plaintiff filed

16  a formal first level grievance appeal on November 28, 2020, he did not receive a response

17  informing him that his First Level Grievance was denied for failure to attach documents until

18  August of 2021. In the Ninth Circuit, an administrative remedy is rendered "effectively

19  unavailable" where an inmate has submitted a first level grievance and received no response for

20  six months, because the prison's failure to respond thwarted the inmate from taking advantage of

21  the grievance system. Fordley v. Lizarraga, 18 F.4th 344, 354–55 (9th Cir. 2021) ("delay in

22  responding to a grievance, *particularly in at time sensitive one*, may demonstrate that no

23  administrative process is in fact available. Id. (emphasis in original) (internal quotations omitted).

24  The Court finds that Plaintiff's November 28, 2020, which stated that he had not been receiving

25  adequate medical treatment related to his back injuries, was time sensitive. The Court further finds

26  that the NDOC Defendants failure to provide any response until August of 2021, eight months

27  after the appeal was submitted and seven months after Plaintiff filed the instant lawsuit, rendered

28  the administrative grievance process under AR 740 effectively unavailable.

- 7 -

**B.    The Effect of Plaintiff's Amended Complaint on the PLRA Exhaustion Requirement**

When a formerly incarcerated person amends their complaint to cure deficiencies in their original complaint, which was filed while they were a "prisoner" under the PRLA, the amended complaint filed after the Plaintiff's release supersedes the original and obviates any exhaustion defense under the PLRA. Jackson v. Fong, 870 F.3d 928, 937 (9th Cir. 2017) ("A plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his operative complaint is not subject to a PLRA exhaustion defense.").

Plaintiff was released from NDOC custody and paroled in January of 2025. Following the Court's Order granting the Core Civic Defendants' Motion to Dismiss without prejudice, and granting Plaintiff leave to amend his complaint to cure deficiencies as described by the Court, Plaintiff filed his Amended Complaint on March 7, 2025. The Amended Complaint superseded Plaintiff's previous complaint, which was filed while he was still a prisoner. Because Plaintiff was no longer a prisoner at the time he filed his operative complaint, he is not subject to a PLRA exhaustion defense. Id. at 936 ("[O]nce a prisoner is no longer in custody, there is nothing to gain by forcing the prisoner through the administrative process.").

///

///

///

///

///

///

///

///

///

///

///

///

1

**V.    CONCLUSION**

2

For the foregoing reasons, **IT IS ORDERED** that the (ECF No. 163) Motion for Summary

3

Judgment by Defendants' Bryan and Nash is **DENIED**.

4

**IT IS FURTHER ORDERED** that the stay on this case pending resolution of the instant

5

Motion is lifted. Plaintiff and Defendants Bryan and Nash shall file an Amended Joint Proposed

6

Discovery Plan and Scheduling Order within 21 days of the entry of this Order.

7

8

9

**DATED:** March 24, 2025.

10

11

_____

12

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28